May it please the Court. Good morning. Good morning. And are you Ms. Wilson? I am. And we have for Respondent David Shuchik. Yes, sir. Again, this case is set for a maximum of 20 minutes per side argument. If you'd like to make rebuttal argument, please stop short of using your full 20 minutes.  Your Honor, I'd like to reserve four minutes for rebuttal, just to let you all know. This case is about whether a union can negotiate over a proposal providing compensation for the extra time an employee spends commuting. NTEU submitted such a proposal to the IRS, but the head of that agency rejected it. The agency claimed that the union's proposal was inconsistent with an Office of Personnel Management, or OPM, regulation. Specifically, the agency claimed, and the FLRA agreed, that Section 422B prohibited bargaining for compensation for commuting time. We believe that OPM did not intend to absolutely bar or prohibit bargaining over commute time in Section 422B. Okay. Let me ask this question. If your interpretation of the Part 551 regulations is accepted, wouldn't that reasoning permit Federal employees to bargain for compensation for any amount of home-to-work commute time? In other words, if we adopt your interpretation of Part 551, then couldn't the union bargain for full payment of compensation for all commuting time, not just the extra commute time for the temporary station that was involved in this case? Yes, Your Honor. And that interpretation would be consistent with what's within the private sector. With DOL's regulations, which expressly provide that in normal situations, regular everyday situations, commute time is not compensable. But the problem we have here, do we not, is that there is a policy embodied in the regulations that we don't We, the government, don't pay for commute time that is within 40 miles of a Federal employee's official duty station. We do pay per diem for all travel that is outside that area. And isn't that the policy that the regulation includes? We believe, Your Honor, that the policy within the regulation is that in regular situations, the general rule is that commute time is not compensable. But there's nothing in that regulation that bars an agency and a union from negotiating above and beyond that. It's not the Department of the Air Force case, which I understand you argue is distinguishable. But in that case, the argument was that we ought to be compensated for post-work wait time at the security gate. And the D.C. Circuit said, no, there's a Federal policy that says we don't compensate for commuting-related time. And I appreciate the fact that, and you're welcome to argue it again, but I'm having a hard time distinguishing the principle of law that was announced by the D.C. Circuit and why that same principle doesn't apply in this instance. Well, in announcing that principle, the D.C. Circuit relied very heavily on the categorical and absolute and unambiguous language within the section, the post-liminary regulation. It had a reg that said is not compensable, which the reg here doesn't. But they both said they're not hours of work. But let me ask another question of what's bothering me. And I'm going to ask each side what's bothering me about their position, so it just gives you a chance to argue it. Am I correct that your interpretation would allow Federal employees to bargain to be paid for time that is not hours of work, like sitting at home? In other words, could Federal employees bargain, we're going to be paid 10 hours per week for time when we go to movies or to nightclubs or, you know, go hiking? Well, bargaining is always constrained by what? I'm just asking, could they bargain for that under your interpretation of the regulation? It would depend on whether there was discretion to bargain. Here, we're arguing that the agency has discretion to bargain because there is no absolute prohibition. But would there be discretion to bargain for the non-work that I just mentioned? There are regulations which specifically hold, which specifically define hours of work as not being, sitting at home, the on-call situations where you're sitting. But here, the regulation defines hours of work that it doesn't include commute time. But the hours of work definition includes, it's companion regulation 104, which includes negotiated agreements. So the two regulations. Is your answer that they could negotiate hours of work to include the activities Judge Gould mentioned? Unless those activities are specifically barred, yes. I think it's important to know, to understand the regulation, that everybody agrees, the FLRA, the Office of Personnel Management, Department of Labor, that the FLSA says basic minimum protections here. And that those protections can be supplemented under the Portals Quarter Act by negotiated agreements. Unless there's a government-wide regulation that prohibits the subject of the negotiation. Would you agree with that? Well, there's some question, Your Honor, as to whether OPM has the authority to absolutely prohibit bargaining. Our position is that OPM does not have that authority. Well, doesn't OPM have the authority to promulgate government-wide regulations relating to personnel matters? Yes, Your Honor. But OPM must administer and must implement those regulations consistent with the Fair Labor Standards Act. What do we do with the fact that OPM is not a party to this proceeding? That seemed to make a difference, I think it was, to the D.C. Circuit and Department of the Air Force. Yes. That would certainly be a problem if we were challenging the validity of the regulation. But here, because our position is that the regulation permits bargaining, or at the very least is not absolutely prohibited. But you're asking us to, in essence, render a judicial interpretation as to what OPM's regulation means, which might, depending on how we rule, have an impact on the reach of OPM's regulation. We believe. And carve out an exception. And I'm having a hard time understanding why you didn't join OPM as a party to the lawsuit. Because you really are challenging the meaning of that regulation and the extent to which it may or may not apply to the Treasury employees in this case. Well, the FLRA certainly had the option of going to the OPM and asking what their interpretation was, and they didn't. Well, I guess the question I'm asking you is, are they an indispensable party if we're going to grant the relief that you're asking? I don't believe so, Your Honor. That this Court is certainly well-positioned to interpret the regulation consistent in the manner that it's consistent with the FLSA. Well, but that's not the question. We know we have the power. Right. But the question is whether or not we ought to be informed by the views of the agency that wrote the regulation as to what it means. I mean, I've got your interpretation. I assume I'm going to hear from counsel for the Secretary that it means something quite different. But I don't have before me a representative of the agency that wrote the regulation to help guide the Court's decision. Well, again, Your Honor, we believe that it's not necessary to go back to OPM, because this Court is well-positioned to interpret the regulation. Of course, we... You're not answering my question. Yes. You're telling me I have the power. I know I have the power. The question is, shouldn't I be informed by the views of the agency who wrote the regulation as to what it means? And you're saying, no, you don't need to be informed. Just take my word for it and rule in my favor. That's kind of what you're saying. Well, Your Honor, what I'm saying is that there are many opportunities here to go ask OPM, and there's no need to prolong the process here by putting... As I understand it, you're saying they're not a necessary or indispensable party because complete relief can be given based on our interpretation of the regulation, and they don't really have to be here, although it might be nice to know what they would say. Yes. Absolutely. That's how I see it. He's much more gracious. Getting back to the FLSA, Your Honors, it's very important to note here, or we believe it's very important to note here, that OPM's regulation must be read in a manner that's consistent with the private sector. And as we point out in our briefs... But why do you base that argument that the OPM regulation must be consistent with the private sector? What case authority or government regulation are you relying upon to support that argument? There's a D.C. Circuit case, AFGE v. OPM, which found that in administering its regulations, OPM must act in a manner consistent with the private sector and DOL, and that the regulations are to be read together. And there is a presumption that OPM is performing its role as the administrator. What's the name of that case? AFGE v. OPM. What's the citation? It's cited if my... It's in your brief. Okay. It's in your brief. Yes, ma'am. 821-5-2-761. Yes. I have a copy for it if you need it. I have it. Okay. And in that case, the D.C. Circuit was very explicit that OPM, when tasked with the responsibility of administering the Fair Labor Standards Act, was to do so in a manner consistent with the private sector, that we are to read the OPM's regulations with that presumption in mind. The counsel doesn't, in that case, say that it cannot conflict with anything in the FLSA, right? Oh, yes. OPM cannot conflict. Right. Right. And so is your argument, then, that the regulation at issue in this case conflicts with the FLSA? Well, our position is that it permits negotiation, and that's the only way to read it so that it would not be in conflict with the FLSA, that the FLRA's interpretation of Section 422 puts the regulation in direct conflict with the language and purpose of the Fair Labor Standards Act. How so? Well, under the FLRA's interpretation, the agency and the union would be prohibited from bargaining, bargaining which is specifically permitted under the Portals to Portal Act. The Portals to Portal Act states that normally commute time is not compensable, but that that commute time can be supplemented by negotiated agreement. And there's nothing in Section 422 to indicate that OPM wanted to absolutely prohibit bargaining here. But doesn't this get back to the question Judge Gould asked you earlier? It seems to me that there are limitations on what the employer and the union can permissibly bargain for in the administration of federal labor law. And the question, I suppose, is whether or not this is one of them. Yes, Your Honor. There are limitations. There are statutory limitations. We're bound by the federal sector labor management. So it's not wide open. You can't negotiate over every term and condition of employment if there is a statutory-slash-regulatory bar that clearly prohibits bargaining over that particular issue. Yes. Take, for example, overtime. A union and an agency could not bar for or could not negotiate for time in three quarters because it's mandated by statute that federal employees are entitled to time and a half. But here we're arguing that the agency has discretion to bargain, that there is no statutory limitation or statutory requirement on compensation for commuting time. The Section — Can we get back to my original question, though? Isn't the bar, if there is one, that we just don't pay for commute time within 40 miles of one's official duty station, no matter how much time it takes you to get to where you're supposed to be at work? That is the usual situation, Your Honor. Isn't it 50, by the way? I thought the duty station covered 50 miles, and here you guys were negotiating. The union was negotiating to get extra commute time for the area where it's between 40 and 50. The normal duty station is defined by agency. Here the IRS defined it as a 50-mile radius. Yes. Okay. But you were bargaining over time difference, were you not? In other words, how much extra time does it take the employee to get to the temporary duty station than it would normally take to get to his or her official duty station? Yes. Yes. And your bargaining only covered the case where something was more than 40 miles, I thought. No, Your Honor. No. We're talking about within that 40-mile radius? Within — any temporary station that takes longer than going to the — The normal commuting time. Okay. Would you like me to provide an example, or — I think I understand. Yeah. That would help. I assume that, for example, we might be dealing with auditors who are going out to a corporate taxpayer's work site, and then they're going to be there for days or weeks conducting an audit as opposed to doing it at their official duty station. Is that a typical example? I think it would be, yes. Here are the facts of the case. The IRS, for the benefit of the agency, had temporarily assigned a number of employees to the Seattle office. And they were originally assigned to Bellevue, to a variety of offices that were much closer to where they lived. And so they were accustomed to commuting from their home to the Bellevue office, for example. And having to travel to Seattle extended their commute time considerably. So the employer changed their duty station? Temporarily. Can't the employer do that? Yes. The question is, do they have to pay for it? Exactly. Or the question, Your Honor, is actually whether the agency's prohibited from negotiating for that extra time. And we're arguing that, no, it's within the agency's discretion to compensate employees for that time. Counsel, what's your response to 5 U.S. Code section 7114C, which explicitly gives the head of the agency approval authority over any negotiated agreement? The agency is entitled to review the agreement and can refuse to negotiate over proposals that are inconsistent with the law or regulation. And here we're arguing there is no such inconsistency. So the statute recognizes that regulation can bar the subject of negotiation, right? Yes. Okay. Yes. You have about 4.5 minutes left. Did you want to save it for rebuttal time or less? Yes, Your Honor. Thank you. We'll proceed to Mr. Shuchek. And you have 20 minutes for argument. But as I said earlier, you're not required to use 20 minutes, if you'd like. Thank you. Good morning, Your Honors, and may it please the Court. My name is David Shuchek, and I appear before you today on behalf of the Federal Labor Relations Authority to argue that the union's petition for review should be denied. If I may, I'd like to turn directly to one of the Court's questions. I believe it was Judge Gold's question about whether or not the union is arguing that employees can negotiate to be paid for something that is not hours of work. If that's a misinterpretation of the question, I apologize. That's getting to what I was asking. The union has never argued and, in fact, has maintained before the authority in comptroller general decisions and authority decisions and court decisions all make a one-to-one link between hours of work and pay. Below in the proceedings before the authority and the pleadings to this Court, no one has argued that employees can negotiate to be paid for something other than hours of work. And that's why the language in 422 is categorical, is blanket. When OPM said that home-to-work travel could not be hours of work, that necessarily included in it the implication that it could not be compensable. There is that. But counsel's argument is that the union and the employer can negotiate the definition of hours of work. And so it could take it outside the usual realm of activity that's considered hours of work. What's your response to that? There are circumstances where OPM allows that, Your Honor. For example, in subpart 411, I believe, OPM allows for law enforcement and firefighting employees to, through negotiated agreements, determine whether or not their meal periods are hours of work. OPM does, in some circumstances, allow for negotiated agreements. However, through the language of the statute, it does not. I hope this won't confuse the issue further. But would that also, for example, cover a law enforcement officer who is essentially on standby at home and can be called out at any hour of the day or night, and therefore they go on the clock as soon as they get in their car or get the call to activate them to an emergency? I don't remember 551.411 in that level of detail, Your Honor. I believe that it's set up for employees, firefighting employees and law enforcement employees, who have tours of duty of longer than 24 hours. And those employees are then allowed to negotiate whether or not their meal periods are hours of work. The authority didn't examine this regulation. I only call it to the point's attention as an example of when OPM has said, yes, negotiated agreements can come into play. My example actually may not be applicable, because there used to be a concept, at least with sworn special agents, of administratively uncontrollable overtime, AUO, so they got an extra 25 percent of their base salary. And that was intended to cover examples like the one I just gave, where they have to put in involuntary overtime outside their normal duty hours. I try not to confess ignorance, except when it's absolutely necessary. Well, I'd like to strike my question, because I think I have got us off. Okay. Well, I've got another question for you. Section 551.401 says home-to-work travel isn't hours of work. But 551.401D, as I understand it, says, time that is considered hours of work under this part shall be used only to determine an employee's entitlement to minimum wages or overtime paid under FLSA. Okay? So the reg says that hours of work, as we're computing it, is being considered for purposes of whether you get overtime or not under the FLSA. So does that – how do you answer the argument that hours of work only establishes minimum entitlements that could be altered by contract? Respectfully, Your Honor, I believe that that's not the interpretation of hours of work as it fits into entitlement for pay. If I could refer the Court to some of the comptroller general decisions that were cited in our brief, to the authorities' decision in 31 FLRA 358. There is consistently a notion when discussing hours of pay and compensability that if something is not an hour of pay, if time and work is not hours of work, I'm sorry, then it may not be paid for. The authority never had the opportunity to deal with arguments to the contrary because they weren't raised to the authority. And under 7123C of our statute, the union can't now argue that they are entitled to negotiate for pay even though something is not an hour of work. The authority understood the union's argument. And as I understand the union's argument from opening remarks, it remains today that the reason this proposal can be negotiated over is because home-to-work travel can be made hours of work. Okay. Thank you. Just a practical question. Can you give us some idea of the size of the group of IRS employees that would potentially be covered by our ruling? Respectfully, I'm sorry, I can't, Your Honor. The union would be in a much better position to testify as to the bargaining unit size. Well, I guess Ms. Wilson indicated that initially the negotiation was triggered by something that occurred here in the Seattle area. But is this a government-wide contract, or are we talking about a union local negotiating with a discrete component of the Department of the Treasury such that our ruling would only affect a small group of government employees? It is not nationwide, a nationwide bargaining unit, Your Honor, although I imagine that any ruling that the Court made would have those sorts of implications. Isn't it a local bargaining unit? But if we upheld this, it would be precedential and unions everywhere could ask for it. I think that's right, Your Honor. I think that would have a similar effect that the Department of Air Force case had, except in the other direction, where unions and agencies understood from the Department of Air Force that this sort of thing was nonnegotiable and that you couldn't enlarge the definition of hours of work beyond OPM regs. I would think that a contrary finding from this Court would lead to the opposite reaction. Well, I also assume there must be some category of managerial employees that would not be covered by our ruling, because I assume that they're not eligible for membership in the union. Is that correct? That's right. Generally, Your Honor, managerial employees are not eligible to participate in the union. Well, Ms. Wilson can enlighten me when she comes back up here. I would like to make or address one or two other points before I take my leave of the Court. The first is the idea that because OPM wasn't consulted below, we don't know what But respectfully, Your Honors, I believe that we do. The Department of the Air Force case was a 1991 case. OPM has had 14 years since then. Congress has had 14 years since then to change the law, to change the regs, to make it clear that simply saying something is not hours of work does not mean that you can't negotiate above and beyond that. Neither OPM nor Congress have taken that opportunity. And while I understand that silence is not as persuasive as actual as affirmative action, there is some value to that. Finally, on the union's point that OPM was required to regulate consistent with the Department of Labor's regulations and the FLSA, on its surface, that point is correct. That's what the AFGE decision out of the D.C. Circuit says. However, the AFGE court also went on to say that we understand that because OPM has an integral role both in, and this idea occurs in the Department of the Air Force case, too, not only in implementing the FLSA in the Porter v. Portal Act, but also in setting government-wide regulations and controlling what can and can't be negotiated in the Federal Government, that OPM has a role in creating substantive regulations. They are not required merely to follow in lockstep the Department of Labor's language. As long as they are consistent with the FLSA, there is no problem in an OPM regulation. And we have that consistency here. What the FLSA says is that there is no right to be paid for home-to-work travel. However, in cases where employees and employers reach an agreement to the contrary, this law, the Porter v. Portal Act, the Fair Labor Standards Act, will not make that agreement invalid. But, Counsel, how can an agreement be reached to the contrary if the agency won't allow the agreement to be reached? In the Federal sector, Your Honor, it can't. OPM, wearing one of its hats, in this case the hat of the administrative sort of agency that controls Federal sector employment practices, pay policies, leave policies, has decided that the discretion to negotiate over that, that sort of arrangement, will not be extended within the Federal government. Why is that not inconsistent with the language of the Porter v. Portal Act if that statute specifically recognizes the ability to negotiate that point? Because the Porter v. Portal Act doesn't contain a right to negotiate over that. And that's what the Department of Air Force court said, the D.C. Circuit in the 1991 Department of Air Force decision. It pointed out in explicit language Federal employees have no right under 4B of the Porter v. Portal Act to bargain over this. All that the Porter v. Portal Act says is if an employer and an employee happen to make an agreement of their own free will, then this law will not trump that agreement. Those agreements will still remain effective. However, it doesn't say that even private sector employees have the right to bargain over pay for home-to-work travel. It simply says that when the planets align and an employer and an employee make that agreement, then this law will not trump that. If there are no further questions from the Court. I have none, Your Honor. Thank you, Your Honor. Thank you very much. I appreciate your argument. Now, Ms. Wilson, and you've got four and a half minutes left. And a couple things to address. First, Your Honor, our position is, and this – and we believe that it's consistent with the circuit's position that the comptroller general decisions are not really relevant here. And in any event, those decisions stand for the unremarkable proposition that normally commute time is not compensable. Can we consider them if we find them persuasive? Yes, Your Honor. But, again, they just reiterate the general rule. And we're not arguing that the general rule is not in place. We're arguing that there's nothing in OPM's regulations that prohibit the union agency from bargaining for exceptions to that general rule. Second, I'm hoping that I can provide some clarification on Your Honor's question about the scope of the contract. It was a national agreement that we're dealing with here. It is? Yes, Your Honor. Okay. So it does have nationwide impact. That's our understanding, yes. And how many employees are potentially affected? I don't know the number off the top of my head. What's your union membership? Our union membership is about 150,000. 150,000. But we represent over 30 agencies. The IRS, the bulk of that, the bulk of those. Presumably our ruling would set precedent for the meaning of this OPM regulation, which I think both parties acknowledge is a government-wide regulation, whatever it means. Yes. Okay. Yes. And am I right that there are certain classifications of employees within the IRS who would or would not be covered by such a ruling? It's not everybody who belongs, is a member of the IRS, can belong to the union. You are correct that the FLSA only covers certain categories of employees, and only certain categories of employees are in NTE's bargaining unit. NTE's proposal is consistent with all OPM regulations administering the FLSA. Under the FLRA's interpretation of OPM Regulation 422, OPM would not be administering the FLSA. Rather, it would be instructing the agency to pay the minimum compensation required by law. It would be prohibiting employees through their unions from seeking to be paid anything more. In fact, OPM would be setting a ceiling rather than a floor, which is in conflict with its purpose of administering the basic minimum standards of the Fair Labor Standards Act. In any event, it is our position that OPM did not clearly prohibit or bar bargaining in Section 422B. And we, as we recognize and as the D.C. Circuit recognized and Department of Air Force, OPM knew how to do that. They knew that by adding the phrase, is not compensable, they would be setting or giving, rather, the strongest of signals that they intended to bar negotiation. What language are you relying upon in the Department of Air Force case to support your argument that that was the focal point of the rationale of the holding? There is a paragraph. If you could hand it to me. Well, the Court repeatedly refers to the unambiguous categorical and language of is not compensable. And on page 451, the paragraph that begins, the authority justified its interpretation of the regulation is not outlawing bargaining over post-liminary compensation. I'm sorry. Wait a minute. I'm sorry. That's the wrong paragraph. I'm more than happy to find it for you. That's all right. We're all studying that case. Yeah. We'll be students of it with you. Before your time expires, what is your response to opposing counsel's representation or reliance on the language in Department of Air Force that says, do not have the right to bargain, but if there is an agreement, it is not negated by the Portal to Portal Act? What's your response to that argument? Well, it's our position that the agency is required to bargain with a union over any area where there's discretion to provide compensation. And here, because there is no categorical bar on negotiation, that employees through their unions do indirectly have that right to bargain for compensation. That OPM does not have to affirmatively grant the right to negotiation in their regulations, but that is presumed. There's an overall presumption of negotiability in the federal sector. I understand. Thank you. Appreciate your argument. Thank you. Thank you. We'll conclude the argument. And the National Treasury employers VFLRA case is submitted. We thank Ms. Wilson and Mr. Shuchik for traveling from the nation's capital. And thank you. We will recess for 15 minutes. All rise. This court stands in recess. You know what? I'll take your question. Yeah. Thank you. Thank you. Thank you.   Okay. I'll have a look. I'll come. I want to know if you're concerned about the shooting. Okay. We'll talk a little about it when I get back there.          Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Thank you. Thank you.      Thank you. Thank you. Thank you. Thank you.       Okay. Thank you. Hi, there. Hi, there. How do I sound? Do I sound okay? Can you hear me? Yes, we can hear you fine. How about... Can you hear us? Oh, yes. Quite well. Okay, Great. Great, thank you. Thanks. Can you have to do it out this door, then that door, and then around? I can help you. Okay. Great. When do you think it's going to end? I think about an hour. Okay. Do you want to see what it looks like? Okay. All right. I mean, you can start. Don't worry. I don't have any problems. Okay. You're going to see all three judges. And it's actually better here. When I did it in the courtroom last fall, the camera's up there, and then when they talk to me, I would look down at them, and then I would... It was natural to just address them this way, but I looked like I was looking away from them. But this is set up well, so I think that you can look at them, and it looks like you're looking at me, which is better than what it was. Okay. All right.
judges: Gould, Tallman, Rawlinson